IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CLAY CHASTAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CV-00315-DGK |
| | ) | |
| CYPRESS MEDIA, LLC, d/b/a | ) | |
| The Kansas City Star, and | ) | |
| THE McCLATCHY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This case arises from Plaintiff Clay Chastain's allegations that Defendant The Kansas City Star ("the Star"), a local newspaper, defamed him in a March 2019 mayoral candidate profile. Now before the Court is the Star's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 3). Because Plaintiff has failed to plead sufficiently the elements of a defamation claim, the motion is GRANTED.

**Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. To avoid dismissal, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than label and conclusions, and formulaic recitations of the

elements of a cause of action will not do." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2009).

Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint—such as the allegedly defamatory writings in a defamation case—are not considered matters outside the pleading. *See Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

Finally, Because Chastain is representing himself in this lawsuit, the Court construes his filings liberally to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**Background**

In reviewing a motion to dismiss, the court construes the complaint liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). With that requirement in mind, the Court finds the facts to be as follows for purposes of resolving the pending motion.[1]

On March 25, 2019, the Star published an article profiling three candidates who were running to become the next mayor of Kansas City, Missouri. The profiles included excerpts from interviews conducted with the candidates by author Melinda Henneberger and contained numerous quotations. Among other things, Henneberger wrote that Chastain "suffered from depression and struggled financially, but will never stop running" (Doc. 3-2 at 4). She also reported that, "At one point, he was put on a watch list at City Hall in response to perceived threats against Mayor Sly James." The phrase "watch list at City Hall" was also hyperlinked to a Star article published on March 13, 2018. That article stated that, "City officials confirm that following the 2015 mayoral

---

[1] These facts are drawn from the Complaint (Doc. 1-1); three amendments to it made by the Amended Petition (Doc. 1-2); a March 25, 2019, article from the Star (a clearer copy of which is filed in the record as Doc. 3-2); and a March 13, 2018, article from the Star which was hyperlinked to the 2019 article (Doc. 3-3).

2

Case 4:19-cv-00315-DGK   Document 16   Filed 07/22/19   Page 2 of 8

election, in which he [Chastain] was crushed by incumbent Sly James, Chastain was placed on a little-known security 'watch list.' They said it is for individuals have made threats or exhibited menacing behavior while in City Hall." (Doc. 3-3 at 2.) It then quoted Troy Schulte, the City Manager, as saying that City Hall's chief of security "'decided out of caution to place him (on the list) after the most recent (mayoral) election because he was heard making threats, or what sound like threats,' against Mayor Sly James." *Id*. at 3-4.

Following publication of the March 25, 2019, article, Chastain filed a four-page complaint in Missouri state court, alleging the Star defamed him by stating he "was put on the watch list at City Hall in response to perceived threats against Mayor Sly James" (Doc. 1-1 at 1). The Complaint, as amended ("the Amended Complaint") concedes that "the Sly James Mayoral Administration placed Chastain on its 'watch List' (sic) for individuals the city deemed dangerous" but protests that "[a]t no time did the City ever state why they had placed Chastain on its Watch List." *Id*. at 2. The Complaint alleges that the Star published the statements to "smear his public reputation and undermine his chances of winning the KCMO mayoral election." *Id*. at 1.

The Star timely removed this action to federal court. The Star now moves to dismiss the Complaint for failure to state a claim.

## Discussion

Chastain alleges that the Star made three defamatory statements: (1) that he was placed on Kansas City's watchlist for threatening the mayor; (2) that he suffered from depression and struggled financially; and (3) that he filed many lawsuits against the City of Kansas City.[2] Because this Court is hearing these Missouri state law defamation claims pursuant to its diversity

---

[2] The Complaint, as amended, only discusses two defamatory statements. Plaintiff added the third in his response to the Star's motion to dismiss. Although the Court would not ordinarily consider this argument because it is not part of the Amended Complaint, to ensure substantial justice is done and resolve this case on the merits, the Court addresses all three.

3

jurisdiction, Missouri law applies to this case. *Gray v. AT&T Corp.*, 357 F.3d 763, 765 (8th Cir. 2004). Under Missouri law, a plaintiff alleging defamation must plead: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) that damages the plaintiff's reputation. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000). The Star contends the Complaint fails to state facts which plead the statements were false and made with the requisite degree of fault.

The requisite degree of fault for a public figure, such as Chastain, is actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964); *Bauer v. 7-Eleven, Inc.*, 391 S.W.3d 25, 27 (Mo. Ct. App. 2012). "Actual malice exists where a defendant had actual knowledge that the alleged defamatory state was false or acted with reckless disregard as to its truth or falsity at a time when the defendant had serious doubts as to its truth." *Bauer*, 391 S.W.3d at 27 (citation omitted). Reckless disregard can be established by "evidence of an intent to avoid the truth," *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 693 (1989); evidence that the defendant "entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); or evidence that the defendant acted with a "high degree of awareness of [a statement's] probable falsity," *Garrison v. State of Louisiana*, 379 U.S. 64, 74 (1964).

**I.    Chastain has not sufficiently pled that the first statement was either false or published with actual malice.**

The Complaint first alleges that the Star defamed Chastain by writing that he "was put on the watch list at City Hall in response to perceived threats against Mayor Sly James." The Complaint, however, fails to plead sufficiently this statement was either false or published with actual malice.

Indeed, the Complaint concedes that the statement is not false; it acknowledges that Chastain was placed on the City's watchlist for being perceived as dangerous. While the City may

4

have wrongly perceived Chastain as being dangerous and placed him on the watchlist for no valid reason, this does not change the fact that he *was* placed on the watchlist. Thus, the statement is essentially true and not actionable as defamation. *See Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012).

Even if the statement was false, the Complaint does not plead the statement was made with actual malice. The Complaint alleges the Star published the statement because it did not want him to win the election, and that this constitutes actual malice. Compl. at 3 (Doc. 1-1). In his brief, Chastain adds that Henneberger should have doubted the veracity of the March 2018 story because he denied the accusation, and it did not contain a scintilla of evidence that he had actually threatened the mayor. Resp. at 3. Moreover, he argues it could not have contained any evidence because none existed: there were no police reports made of any threats, which presumably would have been done if he had actually made a threat, and neither the City Manager nor the mayor could "recall the specifics" why Chastain was placed on the watchlist (the mayor only recalled Chastain getting "verbally pushy"). *Id*. Chastain also argues the Star did not mention in the article that he was denying the charge and that he was suing the City over being placed on the watchlist. *Id*. at 4. Chastain notes that the mayoral primary was only eight days away when the March 25, 2019, article was published, and that no voter was going to support a candidate who had threatened the existing mayor. *Id.* at 4. These facts, he contends, establish that the Star knew, or should have known, that the story was untrue, and thus the statement was made with actual malice.

These allegations do not establish actual malice because they do not show either actual knowledge that the statement was false or that the Star acted with "reckless disregard" to its truth. While they might support a claim that the Star's reporting was negligent, a failure to further investigate why Chastain was put on the watchlist does not constitute actual malice. *See Glover*

5

*v. Herald Co.*, 549 S.W.2d 858, 861 (Mo. 1977) ("[N]egligence is 'constitutionally insufficient to show the recklessness that is required for a finding of actual malice.'") (quoting *Sullivan*, 376 U.S. at 288); *see also Harte-Hanks*, 491 U.S. 657, 688 (1989) (holding a failure to investigate before publishing is insufficient to establish actual malice).[3] Even if the Star wanted Chastain to lose the election, it would not be enough. "Evidence of a defendant's ill will, desire to injure, or political or profit motive does not suffice" to establish actual malice. *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) (citation omitted). The above allegations do not evidence an *intent* to avoid the truth, so they do not establish actual malice.

Accordingly, Chastain has pleaded no facts which plausibly allege the first statement was either false or that the Star acted with actual malice, and any claim based on this statement must be dismissed.

## II. Chastain has not sufficiently pled that the Star's second statement was published with actual malice.

The Amended Complaint also alleges that the Star defamed Chastain by stating he "suffered from depression . . ." (Doc. 1-2 at ¶3). In his response to the Star's motion to dismiss, Chastain added the words from the article reflected in the ellipses that were omitted from the Amended Complaint: "and struggled financially[] but will never stop running" (Doc. 5 at 5). In his briefing, Plaintiff asserts these statements are false because he "has never suffered from

---

[3] In fact, Henneberger was entitled to rely on the City Manager's statement because he was in a unique position within the mayor's administration, and there was "no reason to doubt [the Star's] source." *Speer v. Ottaway Newspapers, Inc.*, 828 F.2d 475, 478 (8th Cir. 1987); s*ee also Williams v. Pulitzer Broad. Co.*, 706 S.W.2d 508, 512 (Mo. Ct. App. 1986) (rejecting argument that "political source" was biased and therefore unreliable). The fact that Chastain vehemently denies he ever threatened the mayor matters little. "[T]he press need not accept denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns., Inc. v Connaughton*, 491 U.S. 657, 692 n.37 (1989) (internal quotation omitted); *see also Coliniatis v. Dimas*, 965 F. Supp. 511, 519 (S.D.N.Y. 1997) ("Emphatic denials are part of the landscape of journalism, and a decision to print a story in the face of such a denial, particularly where, as here, it comes from an interested protagonist, does not establish clear and convincing evidence of malice.")

6

Case 4:19-cv-00315-DGK   Document 16   Filed 07/22/19   Page 6 of 8

depression in his entire life (nor treated for depression) and only *briefly* incurred any financial struggle." *Id*. (emphasis added). He contends the Star published these statements "with actual malice because the Star knew not many Kansas City voters would be attracted to vote for a mayoral candidate that had suffered from a mental illness and struggled financially." *Id*.

Neither part of the statement is actionable because, as discussed above, ill motive—that the Star wanted him to lose the election—does not suffice to establish actual malice. Further, the second portion of the statement does not satisfy the requirement that the statement be false. Chastain acknowledges that he has had financial struggles, albeit only "briefly," and therefore the statement is, in the eyes of defamation law, essentially true.

### III. Chastain has failed to plead that the Star's third statement was false.

The Court now turns to Chastain's third and final claim. In his response to the Star's motion to dismiss, Chastain argued:

> The Star's March 25 report also contained this false defamatory statement (page 4, para. 7), "He (Chastain) moved away from Kansas City in 1999 with his *second* wife. But that marriage too, broke up because "I couldn't let go of my politics." Then the Star added its own opinion, "**By which he means, his many lawsuits against Kansas City**."

Resp. to Mot. to Dismiss (Doc. 5 at 4) (emphasis in original).

This statement is not actionable because Chastain acknowledges that it is an opinion, and it is well-settled that an opinion cannot form the basis of a defamation claim. *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir. 1986) ("Opinion is absolutely protected by the First Amendment.") (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)). Additionally, to the extent the Star's statement was one of fact, he has failed to allege it is false. In the same briefing, Chastain acknowledges that he has sued the City many times. Resp. at 3 ("Chastain … was suing the City for defamation over that false accusation."); *id*. at 4 ("Chastain only filed
7

lawsuits against the City for its role in blocking votes on those petitions or changing the meaning of those petitions.").

## Conclusion

The Court holds that the Complaint, as amended, fails to state a claim for defamation. Accordingly, the Star's s motion to dismiss is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date:  July 22, 2019 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT